IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2015 SEP 24  PM 2: 24
CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
          DEPUTY

ANNETTE SALDIVAR,
      Plaintiff,

-vs-

AUSTIN INDEPENDENT SCHOOL
DISTRICT,
      Defendant.

CAUSE NO.:
A-14-CA-00117-SS

**ORDER**

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendant Austin Independent School District's (AISD) Motion for Summary Judgment [#30], Plaintiff Annette Saldivar's Response [#40] thereto, Defendant's Reply [#41] in support, and Plaintiff's Motion for Partial Summary Judgment [#31], Defendant's Response [#38] thereto, and Plaintiff's Reply [#43] in support. The Court also reviewed Defendant's Objections to Plaintiff's Summary Judgment Evidence [#39], Plaintiff's Response [#44] thereto, Defendant's Objections to Plaintiff's Summary Judgment Response Evidence [#42], and Plaintiff's Response [#45] thereto.[1] Having considered the documents, the case as a whole, and the governing law, the Court now enters the following opinion and orders.

**Background**

Plaintiff Annette Saldivar worked at Kocurek Elementary as an administrator assistant and bookkeeper until she was fired on January 30, 2014, after $567 was discovered missing from

---

[1] In reaching the decision to grant AISD's summary judgment motion as to Saldivar's age discrimination claims and deny both cross motions for summary judgment on Saldivar's FLSA claim, the Court did not consider the objected to statements in Bradshaw and Saldivar's affidavits. Accordingly, AISD's objections are overruled as moot.

a bank deposit she made. AISD's stated reason for Saldivar's termination was the missing funds. However, Saldivar claims she was fired because of her age and alleges violations of the Age Discrimination in Employment Act (ADEA) and the Texas Commission on Human Rights Act (TCHRA). Saldivar also claims AISD failed to pay her for overtime in violation of the Fair Labor Standards Act (FLSA).

Based on the materials submitted by both parties, the undisputed facts are as follows. Saldivar worked for AISD for almost nineteen years, serving as the Kocurek Elementary bookkeeper for ten of those years. Pl.'s Resp. [#40-4] Ex. 3 at 1. As the school's bookkeeper, Saldivar was entrusted with the task of safeguarding student fundraising funds and preparing bank deposits for these funds. Def.'s Mot. Summ. J. [#30-2] Ex. A (Saldivar Dep.) at 88. Upon accepting this duty, Saldivar signed the "Activity Fund Bookkeeper Responsibility Statement," which stated Saldivar agreed to "be held responsible for any student activity funds entrusted to [her] and that [she] will reimburse the student organization for any money . . . which is lost due to [her] own negligence, theft, or fraud." *Id.* [#30-3] Ex. A-1 at 1. On September 20, 2013, the bank notified Saldivar $567 in cash was missing from a deposit she made. Pl.'s First Am. Compl. [#12] ¶ 7. Saldivar reported this issue to AISD's Internal Audit Department on September 26, 2013. Def.'s Mot. Summ. J. [#30-8] Ex. C at 17.

On October 10, 2013, a representative from AISD's Human Resource (HR) Department placed Saldivar on paid administrative leave pending AISD's Police Department's investigation into the missing funds. *Id.* [#30-3] Ex. A-2 at 1. Although this investigation was inconclusive, the police referred Saldivar's case to HR for further review. Saldivar Dep. at 146.

On January 17, 2014, Saldivar met with Michael Houser, AISD's Chief Human Capital Officer and the supervisor who ultimately terminated Saldivar, in order to discuss the missing

2

funds. During this conversation, Saldivar generally complained of age discrimination, but she did not provide Houser with any specific instances indicating she was discriminated against because of her age. Saldivar Dep. at 153–60. Saldivar also raised concerns she was underpaid for certain overtime hours.

Pursuant to Houser's request, Saldivar prepared a chart indicating the number of times she worked overtime each month. To verify this information, Houser forwarded this chart to Deanna McParland, the Principal at Kocurek and Saldivar's immediate supervisor. McParland, however, was unable to verify Saldivar's information based on her time entries in Workforce, a web-based software used to track non-exempt employees' hours. Def.'s Mot. Summ. J. [#30-11] Ex. E at 64–67. This is because Saldivar's chart did not indicate dates or times, only the frequency of overtime. *Id.* [#30-3] Ex. A-3.

On Workforce, non-exempt employees were required to "clock in" when they arrived in the morning and "clock out" during their lunch breaks and at the end of the day. Saldivar Dep. at 212–13. As the bookkeeper, Saldivar was in charge of correcting hours entered on Workforce by other non-exempt employees and submitting these records to McParland for approval. *Id.* at 142–44. Saldivar was required to submit corrections of her own time record directly to McParland for approval as well. *Id.* at 143–44.

Saldivar's work schedule was from 7:00 a.m. to 3:30 p.m. *Id.* at 91. According to Workforce records submitted by AISD, Saldivar reported a thirty to forty minute lunch break most days; on days Saldivar did not "clock out" for lunch, she would ask McParland to adjust her time records to reflect a thirty-minute lunch break. *See generally* Def.'s Mot. Summ. J. [#30-4] Ex. A-8, A-9. On at least one occasion, Saldivar submitted a correction to her time record stating she had worked late and through her lunch break. *Id.* [#30-4] Ex. A-9 at 1. From this comment,

AISD maintains Saldivar knew how to properly notify her supervisor when she worked overtime. *Id.* [#30] at 18. Indeed, in her deposition, Saldivar admitted she intentionally underreported the number of hours she worked each week, explaining she underreported these hours because McParland had warned the staff not to "abuse" overtime hours. Saldivar Dep. at 107.

Saldivar was terminated on January 30, 2014. In his termination letter, Houser cited the missing funds and the resulting "failure of [] duties as the bookkeeper." *Id.* [#30-3] Ex. A-4 at 1. At the time she was fired, Saldivar was forty-three years old. Saldivar Dep. at 156. Saldivar was temporarily replaced by Odelia Rivera, who was sixty-nine years old, and permanently replaced by Yolanda Sosa, who was fifty-one years old. *Id.* [#30-20] Ex. M at 4.

Saldivar filed a charge of discrimination with the Equal Employment Opportunity Commission on March 20, 2014 and received notice of her right to sue on May 19, 2015. Pl.'s First Am. Compl. [#12] Ex. A 1–4. Saldivar initiated this action by filing her complaint on June 26, 2014. On June 22, 2015, AISD filed its motion for summary judgment on all of Saldivar's claims. That same day, Saldivar filed a motion for partial summary judgment on her FLSA claim and AISD's affirmative defenses to Saldivar's age discrimination and FLSA claims. AISD filed its response, making Saldivar's partial summary judgment motion ripe for consideration; Saldivar then filed her response to AISD's motion for summary judgment. The Court now considers AISD's motion for summary judgment and Saldivar's motion for partial summary judgment.

## Analysis

### I. Legal Standard—Summary Judgment

When both parties move for summary judgment, the Court reviews the motions independently of each other, viewing the evidence in the light most favorable to the non-moving party with respect to each motion. *Shaw Constructors v. ICF Kaiser Engineers, Inc.*, 395 F.3d

533, 539 (5th Cir. 2004); *Courtland Custom Homes, Inc. v. Mid-Continent Cas. Co.*, 395 F. Supp. 2d 478, 480 (S.D. Tex. 2005). Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir.2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir.2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of*

5

*Conn.*, 465 F.3d 156, 164 (5th Cir.2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.* "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

## II.   Application

Saldivar asserts the following two claims: (1) age discrimination under the ADEA and the TCHRA and (2) uncompensated overtime in violation of the FLSA. AISD has moved for summary judgment on all of Saldivar's claims. At the same time, Saldivar filed a cross motion for partial summary judgment on her FLSA claim and AISD's affirmative defenses to Saldivar's claims. The Court will address each in turn.

### A.   Age Discrimination under the ADEA and TCHRA

AISD moves for summary judgment on Saldivar's claim she was terminated because of her age in violation of the ADEA and the Texas Commission on Human Rights Act (TCHRA).[2] Both the ADEA and the TCHRA make it unlawful for an employer to discharge an employee

---

[2] In her complaint, Saldivar also alleges McParland discriminated against Saldivar by harassing her, falsely accusing her of misconduct, and treating her rudely. Pl.'s First Am. Compl. [#12] ¶ 36. However, Saldivar disclaimed all but the latter accusation in her deposition and has produced no other evidence to support these claims. Moreover, the mere fact McParland may have treated her rudely does not amount to an adverse employment action. *See Porter v. Quest Diagnostics*, No. 3:10-CV-888-M, 2012 WL 911936, at *6 (N.D. Tex. Feb. 10, 2012) ("[R]ude treatment by an employer does not qualify as an adverse employment action forming the basis of an age discrimination claim.").

6

because of her age. *See* 29 U.S.C. § 623(a)(1); TEX. LAB. CODE ANN. § 21.051. Because Saldivar's disparate treatment claims are based on circumstantial evidence of discrimination rather than direct evidence, the Court employs the *McDonnell Douglas* burden-shifting analysis. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973); *Harris v. Martinsville Indep. Sch. Dist.*, 448 F. App'x 474, 477–78 (5th Cir. 2011) (establishing a prima facie case under the TCHRA requires the same analysis as an ADEA age discrimination claim).

To establish her prima facie case, Saldivar must prove: (1) she was a member of a protected class (those over the age of 40); (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) she was either "otherwise discharged because of [her] age." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 957 (5th Cir. 1993). If the plaintiff establishes a prima facie case of discrimination, the employer must then respond with a "legitimate nondiscriminatory reason," supported with evidence, for its actions. *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). If the employer meets its burden of production by advancing a legitimate nondiscriminatory reason, the plaintiff bears the burden of persuasion to demonstrate the employer's reason was a mere pretext. *Id.* The plaintiff may meet this burden under the ADEA by producing circumstantial evidence that "the employer's proffered explanation is unworthy of credence." *Waggoner v. City of Garland, Tex.*, 987 F.2d 1160, 1164 (5th Cir. 1993) (internal quotations omitted).

i.  **Prima Facie Case**

It is undisputed Saldivar established the first three elements of her prima facie case. However, AISD contends Saldivar failed to meet the fourth element of her prima facie case—she was terminated because of her age. Her claim may survive summary judgment if she shows there

is a fact issue as to whether age "actually motivated" AISD's decision. *See Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004). To establish this element, Saldivar argues: (1) McParland demonstrated a pattern of age bias against older employees, and (2) Saldivar was treated disparately from similarly situated bookkeepers.[3]

Saldivar's first argument is inapposite. McParland's alleged pattern of discrimination is irrelevant to the dispute concerning whether Saldivar's termination was motivated by her age. Indeed, McParland was not ultimately responsible for determining whether Saldivar would be terminated; Houser was. Def.'s Mot. Summ. J. [#30-19] Ex. L ¶ 4. McParland testified her only involvement in the matter was during AISD's internal audit investigation, when she recommended Saldivar repay the money before returning to work. *Id.* [#30-11] Ex. E at 154–55. In the Fifth Circuit, to make out a prima facie case of age discrimination, Saldivar "must establish some nexus between the employment action taken by the employer and the employee's age." *Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 305 (5th Cir. 2000) (quoting *Moore v. Eli Lilly & Co.*, 990 F.2d 812, 819 (5th Cir. 1993)). Saldivar has failed to produce any evidence establishing a nexus between her termination by Houser and McParland's alleged age bias. Accordingly, whether or not McParland demonstrated a pattern of age bias against older employees is irrelevant.

Saldivar's second argument likewise fails to establish a prima facie case for discrimination, because she cannot show she was treated disparately from other similarly situated bookkeepers. To establish disparate treatment, Saldivar points to Jessica Trevino, a 30-year old

---

[3] Although somewhat unclear from her Response in Opposition to AISD's Motion for Summary Judgment, Saldivar also argues AISD's replacement of Saldivar with older employees is evidence of age bias against Saldivar. To the extent Saldivar is claiming reverse discrimination, this argument must fail. In *Gen. Dynamics Land Sys., Inc. v. Cline*, the Supreme Court expressly held the ADEA only forbids discrimination "preferring young to old." 540 U.S. 581, 593 (2004).

8

bookkeeper at Pickle Elementary whose supervisor, Joel De La Garza, decided to retain her after $687.71 was discovered missing from a deposit she made.

Saldivar has the burden of proving the adverse employment action was taken under "nearly identical circumstances." *See Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009) (discussing racial discrimination in violation of Title VII, but applying the same *McDonnell Douglas* framework). As the Fifth Circuit stated,

> The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violations histories. And, critically, the plaintiff's conduct that drew the adverse employment decision must have been "nearly identical" to that of the proffered comparator who allegedly drew dissimilar employment decisions. If the "difference between the plaintiff's conduct and that of those alleged to be similarly situated *accounts for* the difference in treatment received from the employer," the employees are not similarly situated for the purposes of an employment discrimination analysis.

*Id.* (emphasis in original).

Although Saldivar and Trevino had similar job responsibilities and "comparable violation[] histories," Saldivar nevertheless fails to show she was similarly situated to Trevino for two reasons. *See id.* First, Saldivar and Trevino had different supervisors. Saldivar's supervisor was McParland, while Trevino's supervisor was De La Garza. Second, although Houser was the ultimate decisionmaker in Saldivar's case and may have had the authority to terminate Trevino upon learning of the missing funds, it is undisputed Houser had no knowledge of Trevino's case at the time her funds went missing. Pl.'s Resp. in Opp'n to Def.'s Mot. Summ. J. [#40] ¶ 39. Indeed, Houser testified he was unaware of Trevino's case until discovery in the current litigation began, months after De La Garza decided to retain Trevino as the Pickle Elementary bookkeeper and months after Saldivar's termination. Def.'s Mot. Summ. J. [#30-19]

Ex. L ¶ 7; Def.'s Mot. Summ. J. [#30-22] Ex. O ¶ 4. As Houser explained in his deposition, he "did not feel it was appropriate for [him] to go back and revisit something [that occurred] in October 2013" when De La Garza decided to retain Trevino. *Id.* Ex. H at 59-60. As the Fifth Circuit stated in *Perez v. Tex. Dep't of Crim. Justice*, "the alleged comparator employees [must have been] similarly situated from the perspective of their employer *at the time of the relevant employment decision*[]." 395 F.3d 206, 209 (5th Cir. 2004) (emphasis added). In this instance, Trevino and Saldivar were not similarly situated at the time the relevant employment decisions were made. Therefore, in light of binding Fifth Circuit precedent, Saldivar has failed to show she was treated differently from a younger, similarly situated employee.

Similarly, Saldivar has not provided this Court with evidence she was similarly situated to any other bookkeepers.[4] Saldivar suggests both Odelia Rivera and Eulalia Holmes were similarly situated employees who AISD did not terminate after money for which they were entrusted went missing. Pl.'s Resp. [#40] ¶ 44. However, the Court is unclear how these two comparators have anything to do with the instant case. Rivera and Holmes are both older than Saldivar and therefore within the protected class. *See* 29 U.S.C. § 631(a) (limiting the protected class to individuals who are at least forty years old); TEX. LAB. CODE ANN. § 21.054 (same). Any purported favorable treatment accorded to them does not raise a genuine issue for trial as to Saldivar's age discrimination claims. Because Saldivar cannot make out a prima facie case of age discrimination, summary judgment is granted in favor of AISD on Saldivar's ADEA and TCHRA age discrimination claims.

### ii.    Legitimate, Non-discriminatory Motive

---

[4] Saldivar also points to previous bookkeepers who were terminated after a police investigation revealed evidence of criminal conduct; at most, Saldivar has provided this Court with evidence she is *different* from other employees who were terminated.

Even if Saldivar could establish a prima facie case of age discrimination, her claim still fails under the latter portions of the burden-shifting framework, because AISD has provided a legitimate, non-discriminatory reason for terminating Saldivar. To meet its burden of production, an employer must provide "'clear and reasonably specific reasons' for its actions." *Okoye v. Univ. of Texas Houston Health Sci. Ctr.*, 245 F.3d 507, 513 (5th Cir. 2001) (quoting *Burdine*, 450 U.S. at 258). Houser testified he terminated Saldivar on January 30, 2014 because "student activity funds went missing under her responsibility as the bookkeeper at Kocurek Elementary." Def.'s Mot. Summ. J. [#30-19] Ex. L ¶ 5. Houser's testimony provides a clear and reasonably specific reason justifying AISD's termination of Saldivar. Accordingly, AISD has met its burden of production.

### iii.   Pretext

Even assuming Saldivar made out a prima facie case of age discrimination, Saldivar has failed to establish AISD's stated reason for terminating her was a mere pretext for age discrimination. To meet her burden of persuasion under the ADEA, Saldivar must show pretext "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 378–79 (5th Cir. 2010) (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir.2003)). To show pretext, Saldivar first argues AISD gave Trevino preferential treatment under nearly identical circumstances. However, this argument fails for the same reason Saldivar failed to establish a prima facie case of discrimination. *See supra* Section II.A.i. Although Saldivar and Trevino held the same job responsibilities and the conduct that drew the adverse employment action was nearly identical, Saldivar cannot show Saldivar and Trevino had the same supervisor or their employment status was decided by the same individual.

Alternatively, Saldivar attempts to show pretext by arguing AISD's decision to terminate Saldivar violated its progressive discipline plan, which is one recognized basis for showing pretext. *See Machinchick v. PB Power, Inc.*, 398 F.3d 345, 355 n.29 (5th Cir. 2005) (holding an employer's failure to follow a progressive discipline policy gave rise to an inference of pretext because the policy specifically stated it would be "followed in most circumstances"). However, if the employer has discretion to deviate from the policy, then a failure to follow the policy does not show pretext. *See Taylor v. Peerless Indus. Inc.*, 322 F. App'x 355, 366–67 (5th Cir. 2009) (per curiam) (noting the failure to follow non-mandatory disciplinary policy did not establish a pretext for discrimination without evidence that the employer followed this policy generally or applied it differently to similarly situated employees).

Under AISD's progressive discipline plan, at-will employees are generally given the "opportunity to improve" before they are terminated. Pl.'s Mot. Part. Summ. J. [#31-4] Ex. 3 at 1. However, AISD's progressive discipline policy is not mandatory, as it permits a supervisor to deviate from the stated guidelines upon a determination that an employee's conduct was "egregious." *Id.* Houser testified he believed the $567 discovered missing from Saldivar's deposit constituted egregious conduct. Def.'s Mot. Summ. J. [#30-15] Ex. H at 46. It is not this Court's place to second guess AISD's interpretation of "egregious." *See Moss v. BMC Software, Inc.*, 610 F.3d 917, 926 (5th Cir. 2010) ("The ADEA was not intended to be a vehicle for judicial second-guessing of employment decisions nor was it intended to transform the courts into personnel managers. The ADEA cannot protect older employees from erroneous or even arbitrary personnel decisions, but only from decisions which are unlawfully motivated.").

Saldivar's lastly argues AISD's failure to conduct an investigation into Saldivar's age discrimination claim violated its employment policy. According to the terms of AISD's policy, a

District official is only required to undertake an investigation upon a finding by a preponderance of the evidence the allegations, if proven, would constitute discrimination. Pl.'s Resp. [#40-14] Ex. 13 at 4. Although AISD was notified of Saldivar's age discrimination allegations in November 2013, Saldivar did not provide AISD with any specific instances of prohibited conduct, even when she was discussing her age discrimination claim with Houser as late as January 17, 2014. Saldivar Dep. at 153-154. Therefore, AISD concluded Saldivar did not establish age discrimination by a preponderance of the evidence, and its policy did not require it to investigate her claim.

This Court cannot allow Saldivar's subjective belief she was terminated because of her age serve as the "basis for judicial relief when an adequate non-discriminatory reason for the adverse employment action has been presented." *Hornsby v. Conoco, Inc.*, 777 F.2d 243, 246 (5th Cir. 1985). Even if Saldivar had made out a prima facie case, her age discrimination claims must fail, because she has not established AISD's reason for terminating her was a mere pretext.[5]

Accordingly, AISD's Motion for Summary Judgment on Saldivar's age discrimination claims is GRANTED.

### B. FLSA Overtime Claim

Both AISD and Saldivar move for summary judgment on Saldivar's FLSA overtime claim. Under the FLSA, no employer shall employ any of its non-exempt employees for a work week longer than forty hours, unless the employee is paid at least one and one-half times the regular rate for all overtime hours.[6] *See* 29 U.S.C. § 207(a). The employee "has the burden of

---

[5] To establish pretext under the TCHRA, Saldivar need only show age was a motivating factor. *Squyres v. Heico Companies, L.L.C.*, 782 F.3d 224, 231 (5th Cir. 2015). However, even if Saldivar had established a prima facie case under the TCHRA (which she has not done, *see supra* Section II.A.i), her pretextual arguments fail to meet even the lesser burden of establishing age as a motivating factor under the TCHRA.

[6] It is undisputed Saldivar was a non-exempt employee.

13

proving that [s]he performed work for which [s]he was not properly compensated." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946), *superseded by statute on other grounds, as recognized in Carter v. Panama Canal Co.*, 463 F.2d 1289, 1292–93 (D.C. Cir. 1972); *see also Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 441 (5th Cir. 2005). However, "[t]he remedial nature of this statute and the great public policy which it embodies . . . militate against making that burden an impossible hurdle for the employee." *Anderson*, 328 U.S. at 687. *Anderson* held the employee can either meet her burden by (1) compelling production of the employer's records, or (2) if the employer has failed to keep accurate records, the "employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.* In the latter case:

> The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

*Id.* at 687–88.

In addition to establishing the amount and extent of uncompensated overtime, the employee must demonstrate the employer had actual or constructive knowledge she was working uncompensated overtime. *Garner v. Chevron Phillips Chemical Co., L.P.*, 834 F. Supp. 2d 528, 544 (S.D. Tex. 2011). An employee proves constructive knowledge "if an employer 'exercising reasonable diligence' would become aware that an employee is working overtime." *Id.* Accordingly, if AISD was neither aware nor on notice that Saldivar was working overtime, then AISD did not violate the FLSA's overtime provision.

i.   **Cross-motions for Summary Judgment**

Saldivar asserts her claim under the *Anderson* burden-shifting framework. In moving for summary judgment on this claim, AISD first argues Saldivar cannot prove uncompensated time by a just and reasonable inference. That is, Saldivar's own allegations contradict her self-reported records on Workforce, and as a result, there are no records to support the amount of uncompensated overtime other than Saldivar's own testimony. Second, AISD maintains Saldivar is unable to demonstrate AISD had actual or constructive knowledge of her uncompensated overtime hours, because Saldivar never complained of or reported any unpaid hours to McParland.

Because Saldivar claims AISD does not have accurate employee records, Saldivar must produce sufficient evidence to establish the amount and extent of uncompensated overtime by a just and reasonable inference. *See Anderson*, 328 U.S. at 687. Saldivar provided AISD with a highlighted calendar marking each day Saldivar worked overtime.[7] Saldivar claims she started work before her shift began and "pretty much worked through [her] lunch" on all of the highlighted days. Saldivar Dep. at 113–14. In preparing this calendar, Saldivar relied on her memory and the alarm deactivation records, which she testified were relevant because she turned the alarm off in the mornings the "majority of the time." Saldivar Dep. at 203–04. In addition, Saldivar submitted the testimonies of Rosie Bradshaw and Christina Lavalier, who stated they frequently worked during lunch and witnessed Saldivar doing the same. Pl.'s Mot. Part. Summ. J. [#31-7] Ex. 6 at 1; [#31-9] Ex. 8 at 11-13. Moreover, Saldivar provided the affidavits of two substitute teachers who testified Saldivar would already be in the office working upon their

---

[7] Notably, this calendar contradicts the overtime chart she provided to AISD in December 2013, in which Saldivar claimed to have worked through lunch no more than nine times per month and as little as three times in one month (April 2013). *See* Def.'s Mot. Summ. J. [#30-3] Ex. A-3. However, Saldivar explained in her deposition that this two-page chart, prepared "early on," was just her "trying to figure it out." Saldivar Dep. at 201. Accordingly, she admits this early chart was inaccurate, but maintains the later calendar is correct.

arrival at 7:00 a.m. Pl.'s Mot. Part. Summ. J. [#31-7] Ex. 6. In light of this evidence, Saldivar has established a genuine dispute of material fact as to the amount and extent of uncompensated overtime she worked. *See Carman v. Meritage Homes Corp.*, 37 F. Supp. 3d 860, 864 (S.D. Tex. 2014) (concluding the plaintiffs' testimony regarding the amount of uncompensated overtime, coupled with emails sent by the plaintiffs after they clocked out, was sufficient to satisfy their initial burden).

Even if Saldivar has established the amount of unpaid overtimes she worked, AISD insists Saldivar cannot show it had actual or constructive knowledge Saldivar was working uncompensated overtime. According to AISD, because Saldivar was informed of its timekeeping policy and trained on how to properly record her time (indeed, she was responsible for correcting other employees' time), the administrators at Kocurek were unaware she was working uncompensated overtime. AISD points to several instances when Saldivar reported overtime as evidence Saldivar knew how to notify her supervisor she worked beyond her scheduled hours.

However, AISD instructed its administrators during FLSA training that an employee may eat at her desk only if she is not engaged in any work related activity. Pl.'s Mot. Part. Summ. J. [#31-12] Ex. 11 at 3. In her deposition, McParland testified she had a duty to stop an employee from working more than 40 hours per week. Def.'s Mot. Summ. J. [#30-11] Ex. E at 26–27. Yet, McParland admitted she witnessed the office staff eating lunch at their desks on at least several occasions, but failed to remind them to report any overtime hours worked during their lunch breaks. *Id.* at 27. AISD insists it is not liable because McParland did not know whether the office staff was actually *working* at their desks while eating lunch. However, when viewed in the light most favorable to the nonmoving party, a reasonable factfinder could conclude McParland would

have become aware Saldivar was working overtime had McParland exercised reasonable diligence.

Relying on a quote from the Ninth Circuit stating, AISD insists if an "employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the employer's failure to pay for the overtime hours is not a violation of § 207." *See Newton v. City of Henderson*, 47 F.3d 746, 748 (5th Cir. 1995) (quoting *Forrester v. Roth's I. G. A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981)). However, the plaintiff in *Forrester* is distinguishable from Saldivar, because in *Forrester*, the plaintiff deliberately omitted hours worked from his time sheet "even though he admittedly knew that he would have been paid for those hours." *Forrester*, 646 F.2d at 414. In the instant case, Saldivar and Bradshaw both testified they did not believe they would get paid for reported overtime hours, because they interpreted McParland's warning to not "abuse" overtime hours to mean overtime was not available. Saldivar Dep. at 107. Based on this statement and Saldivar's belief that McParland had "high expectations" for her staff, Saldivar did not think she could report overtime hours. *Id.* at 104. Moreover, the plaintiff in *Forrester* failed to produce any evidence demonstrating this employer should have known about his alleged uncompensated hours. As discussed above, this Court finds there is a genuine issue of material fact as to whether McParland was constructively aware Saldivar was working uncompensated overtime. *See Newton*, 47 F.3d at 748 (stating even if an employee intentionally underreported her hours, "an employee would not be estopped from claiming additional overtime if '[t]he court found that the employer knew or had reason to believe that the reported information was inaccurate'" (quoting *Brumbelow v. Quality Mills, Inc.*, 462 F.2d 1324, 1327 (5th Cir.1972))).[8]

---

[8] Saldivar moves for partial summary judgment on AISD's affirmative defenses to Saldivar's FLSA overtime claim, including estoppel, laches, good faith under the FLSA, limitations, partial payment of overtime

Accordingly, the Court concludes Saldivar produced sufficient evidence to raise a fact issue as to whether she worked uncompensated overtime hours AISD knew or should have known about. AISD and Saldivar's cross-motions for summary judgment as to Saldivar's FLSA overtime claim are therefore DENIED.

## Conclusion

Accordingly,

IT IS ORDERED that Defendant AISD's Motion for Summary Judgment [#30] is GRANTED in part and DENIED in part, as described in this opinion.

IT IS FURTHER ORDERED that Plaintiff Saldivar's Motion for Partial Summary Judgment [#31] is GRANTED in part[9] and DENIED in part, as described in this opinion.

SIGNED this the 24th day of September 2015.

_/s/ Sam Sparks_
SAM SPARKS
UNITED STATES DISTRICT JUDGE

---

hours owed to Saldivar, and failure to mitigate damages. Pl.'s Mot. Part. Summ. J. [#31] at 16–17. Because AISD wholly failed to respond to Saldivar's motion regarding its laches and failure to mitigate damages defenses, the Court GRANTS Saldivar's motion as to these defenses. However, the Court DENIES Saldivar's motion as to AISD's remaining defenses, because these defenses present genuine issues of material fact to be resolved at trial.

[9] Plaintiff's Motion for Partial Summary Judgment is granted only in regards to two of AISD's affirmative defenses. Otherwise, Plaintiff's Motion for Partial Summary Judgment on her FLSA overtime claim is denied.